<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RODNEY SCHUMP, | : |
| | : Civil Action No. 09-164 (RBK) |
| Plaintiff, | : |
| | : |
| | : |
| v. | : **OPINION** |
| | : |
| JEFF GRONDOLSKY, et al., | : |
| | : |
| Defendants. | : |

**KUGLER**, District Judge

Presently before the Court is a Motion for Summary Judgment by Defendants Reiser, Sanchez, Writenour, Lopez, Joanna Wright, Lybrant Wright, Lewars, Pradip Patel, John Chung, Terrero-Leibel, Calaguio, and Grondolosky (collectively, "Defendants"). Plaintiff Rodney Schump ("Plaintiff") filed Opposition. Having considered the submissions without oral argument pursuant to FED. R. CIV. P. 78, for the foregoing reasons, the Court will grant Defendants' Motion.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In November 2007, while Plaintiff was an inmate at the Federal Correctional Institution at Fort Dix, New Jersey, he alleges that he became infected with Methicillin Resistant Stephylcoccus Aureus ("MRSA"). (Pl.'s Compl. ¶¶1-21.) Plaintiff further alleges that despite informing the staff of the prison several times about his condition and seeking medical attention at the prison, the staff refused to send him to the hospital until approximately two weeks after he initially sought medical attention. (*Id.*) Plaintiff spent two weeks as a patient at St. Francis Hospital receiving treatment.

(*Id.* at ¶ 20.) When he returned to the prison, Plaintiff alleges that there was no sanitation of his mattress or cell and prison staff refused to change his wound dressings. (*Id.* at ¶¶ 22-27.) In December 2007, Plaintiff alleges that he returned to his cell and slipped in a puddle of chemicals which Plaintiff claims was put there by another inmate. (*Id.* at ¶ 41.) The inmate who Plaintiff claims put the puddle of chemicals in his cell also allegedly physically assaulted Plaintiff and the prison staff failed to protect Plaintiff. (*Id.* ¶¶ 41-54.)

On January 12, 2009, Plaintiff filed the instant complaint against the Fort Dix Warden and several Bureau of Prison personnel for damages under the theory of personal constitutional tort liability recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"). Plaintiff alleges that "through FCI Fort Dix staff's deliberate indifference, he was infected with Methicillin Resistant Stephylcoccus Aureus (MRSA), staff acted with deliberate indifference by failing to provide proper follow-up treatment, that FCI Fort Dix does not provide proper sanitation, and that staff failed to protect him from an assault." (Defs.' Br. Supp. Summ. J. 1.)

The Court conducted its initial screening of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and allowed Plaintiff's Complaint to proceed at that time. (Docket Entry No. 4, Court's July 30, 2009 Order.) Thereafter, Plaintiff filed a Motion to Amend his Complaint (Docket Entry No. 7) and a Motion for Service of Process (Docket Entry No. 13). On April 9, 2010, the Magistrate Judge denied Plaintiff's Motion to Amend the Complaint and granted in part and denied in part Plaintiff's Motion for Service of Process. (Docket Entry No. 23, Court's April 9, 2010 Order.) The Court granted Plaintiff's motion, insofar as Plaintiff sought an order directing the United States Marshals Service to obtain an address and attempt to effect service upon Defendants McHenry and Ramos, and denied without prejudice Plaintiff's motion insofar as he sought an order

directing the United States Marshals Service to obtain an address and attempt to effect service upon Defendant Vargas. (*Id.*)

While Plaintiff's Motion to Amend and Motion for Service of Process were pending, Defendants Reiser, Sanchez, Writenour, Lopez, Joanna Wright, Lybrant Wright, Lewars, Pradip Patel, John Chung, Terrero-Leibel, Calaguio, and Grondolosky filed the instant Motion to Dismiss the Complaint. (Docket Entry No. 17.) The Court extended the time for filing Opposition until March 15, 2010 (Docket Entry No. 21) but Plaintiff failed to file any Opposition. On June 29, 2010, the Court gave notice to both parties that because Defendants' Motion to Dismiss relied on matters outside the Complaint, the Court would consider said Motion as one for summary judgment pursuant to Rule 56. (Docket Entry No. 26.) The Court gave the parties until July 16, 2010 to submit any additional materials that they wanted the Court to consider. (*Id.*) Plaintiff did not file any additional materials, however, on July 22, 2010, attorney Benjamin Kelsen filed a notice of appearance on behalf of Plaintiff. (Docket Entry No. 27.) Also on that date, Mr. Kelsen filed a letter with the Court requesting a sixty day adjournment of the Motion. (Docket Entry No. 28.) The Court denied Mr. Kelsen's request for a sixty day adjournment but postponed the deadline for opposition until August 10, 2010. (Docket Entry No. 29.) On August 16, 2010, six days after the Court's deadline, Mr. Kelson filed Opposition. (Docket Entry No. 30.) Though Plaintiff's Opposition was filed out of time and without consulting the Court, which would be grounds for the Court to treat the motion as unopposed, the Court will nevertheless consider Plaintiff's arguments.

## II. DISCUSSION

### A. Standard

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *In re Bressman*, 327 F.3d 229, 237 (3d Cir.2003) (quoting *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)). The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. *Id.* at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore,

"[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " *Corliss v. Varner*, 2007 WL 2709661, at *1 (3d Cir. Sept.17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.2003)). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

**B. Analysis**

Under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e ("PLRA"), prisoners may not contest prison conditions under 42 U.S .C. §1983 or any other Federal law in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir.2004). The exhaustion requirement clearly applies to *Bivens* claims. *Hughes v. Knieblher*, 09-2177, 2009 WL 2219233, at * 1 (3d Cir. July 27, 2009) (per curiam) (citing *Nyhuis v. Reno*, 204 F.3d 65, 69 (3d cir.2000)). The exhaustion requirement mandates that a plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," or do "not meet federal standards," or could not result in the relief requested in the suit. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Moreover, the prisoner must "carry the grievance through any available appeals process" before the remedies will be deemed exhausted. *Camino v. Scott*, No. 05-4201, 2006 WL 1644707, at *4 (D.N.J. June 7, 2006) (citing *Nyhuis*, 204 F.3d at 67). "Administrative law [requires] proper exhaustion of administrative remedies, which 'means using all steps that the agency

holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2385 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Summary judgment of an inmate's claim is proper where he has failed to exhaust administrative remedies. *Fortune v. Bitner*, No. 07-3385, 2008 WL 2766156, *3 (3d Cir. July 17, 2008). To exhaust a claim under the Code of Federal Regulations, federal prisoners must comply with the Bureau of Prison's administrative remedy procedure outlined at 28 C.F.R. §542. 10, et seq. To initiate the process, an inmate is generally required to attempt to informally resolve the issue with prison staff. 28 C.F.R. §542.13. If informal resolution is ineffective, the inmate is required to file a formal complaint with the Warden, 28 C.F.R. §542.14, and appeal unfavorable decisions to the regional director and then to the Office of General Counsel, which is the final administrative appeal available. 28 C.F.R. §542.15.

Defendants argue that Plaintiff has not exhausted his administrative remedies for any of his *Bivens* claims and therefore, all claims must be dismissed. (Defs.' Br. 6.) Specifically, Defendants state that Plaintiff filed Remedy Number 479695-R1, alleging inadequate medical care/staff misconduct, on or about January 18, 2008 directly with the Regional Office instead of the Warden, as required by regulation. (*Id.*) Defendants further state that on January 22, 2008, the Region rejected the appeal because it was improperly filed at the Regional level and should have been filed at the institutional level. (*Id.*) Defendants further state that on February 20, 2008, Plaintiff re-filed the grievance, this time with the Central Office, rather than with the Warden as directed by the Regional Office. (*Id.*) The remedy was rejected on February 27, 2008 for failing to file at the appropriate level. (*Id.* at 7.)

On April 18, 2008, Plaintiff filed Remedy Number 490402-F1 with the institution, alleging essentially the same incidents as contained in the instant Complaint (i.e. "deliberate indifference to medical needs resulting in MRSA, improper sanitation in the housing unit, improper follow up treatment and a failure to protect him from an assault by another inmate.") (*Id.*)  This remedy was rejected by the institution for being untimely, as inmates have twenty days from the date of an incident to file a remedy. (*Id.*)  Plaintiff appealed this decision to the Regional Office, which rejected the remedy, stating that the "dates of incidents are Nov. & Dec. 07." (*Id.* at 7-8.)  Plaintiff filed remedy Number 495784-A1, on or about May 29, 2008, directly with the Central Office. (*Id.* at 8.)  In that remedy, Plaintiff alleged inadequate medical attention. (*Id.*)  The remedy was rejected for filing at the wrong level. (*Id.*)  Plaintiff failed to re-file the remedy at the appropriate level. (*Id.*)

In support of its contention that Plaintiff has not exhausted his administrative remedies, Defendants offer the declaration of Tara Moran, a legal assistant at Fort Dix responsible for coordinating all remedy requests and appeals from Fort Dix inmates.[1]  Based upon a review of the relevant computerized indexes, Ms. Moran declares that Plaintiff has not fully exhausted his administrative remedies with respect to any of those issues raised in the instant Complaint. (Moran Decl. ¶2.)

In Opposition, Plaintiff argues that he has exhausted his administrative remedies because on January 18, 2008, he submitted Remedy Number 479695-R1 directly to the Regional Office, as

---

[1] Although not sworn, Ms. Moran's declaration is appropriately considered at the summary judgment stage because it conforms to the requirements of 28 U.S.C. § 1746. *See Bond v. Taylor*, No. 07-6128, 2009 WL 2634627, at *2 (D.N.J. Aug.24, 2009).

allowed by the FCI Fort Dix Handbook regulations because the complaint was of a sensitive nature.[2] (Pl.'s Opp. 4-5.) Plaintiff further argues that the denial was inequitable as Plaintiff believed that his complaint was sensitive which is why he filed with the Regional Office. (*Id.* at 6.) Plaintiff further argues that even if the Court does not agree that Plaintiff did in fact actually exhaust his remedies, it was because Plaintiff did not have any "available" remedies to pursue. (*Id.*) Citing case law from other circuits, Plaintiff argues that "remedies are not available if they are 'remedies or requirements for remedies that an inmate does not know about and cannot discover through reasonable effort by the time they are needed.' *Goebert v. Lee County*, 510 F.3d 1312, 1322 (11th Cir. 2007)." (*Id.*) Plaintiff also states that he "was under the impression that he had no available remedies left." (*Id.*) Plaintiff further argues that according to the handbook and the affidavit of Tara Moran, inmates are "instructed to bring issues relating to their medical needs and treatment to Defendants' attention by filing a medical request." (*Id.* at 10.) Plaintiff further argues that he "verbally raised medical issues with the FCI on a number of occasions, submitted written medical requests concerning his MRSA symptoms, and filed grievances." (*Id.*) In his appeal to the Central Office after his initial sensitive complaint was rejected by the Regional Office, Plaintiff argued that attach[ed] hereto as exhibit "A"

---

[2] The relevant portions of the FCI Fort Dix Inmate Handbook reads: "Staff will first attempt verbal resolution of any issue you may present. Failing verbal resolution of the problem, you may request a BP-8 (Request for Informal Resolution) from the Correctional Counselor. You will fill out the BP-8 and return it to the Counselor. The Counselor will investigate the complaint and prepare a response as soon as possible. If you are not satisfied with the Counselor's response, you may request a BP-229 (old BP-9) Request for Administrative Remedy. For your convenience, the chart below is provided to clarify time limits for the complete Administrative Remedy process... SENSITIVE COMPLAINTS: If an inmate believes a complaint is such a sensitive nature that he would be adversely affected if the complaint becomes known to the institution, he may file the compliant directly to the Regional Director. The inmate must explain, in writing, the reason for not filing the complaint within the institution. If the Regional Director finds the explanation valid, it shall be accepted and a response to the complaint will be processed. If the Regional Director does not agree that the complaint is sensitive, the inmate will be advised in writing of the determination. If the complaint is not determined to be sensitive, it will be returned. The inmate may then pursue that matter by filing a BP-229 at the institution." (Exhibit to Pl.'s Opp. Br., FCI Fort Dix Inmate Handbook, pgs. 7-8;
*see also* http://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf.)

[is] my cop-out to the Warden, together with his written response. I was given no cooperation by the staff and I was told that I could write my complaint 'on anything' and so I did. It is unarguable that under these circumstances my cop-out fell within the spirit and intent of the BOP policy concerning B-9's to the Warden, as the same purposes have been served. The Warden has been put on notice; however my concerns and staff retaliation still continued. Consequently, I was obliged to proceed to the next step in the series of Administrative Remedies the BP-10 and given the retaliatory acts of staff which were ongoing at the time, my only option was a 'sensitive BP-10.'"[3] (*Id.* at 79.) It appears that Plaintiff also filed an identical request to Dr. Sulayman. (*Id.* at 65.)

Plaintiff further argues that "if, as here, the FCI gives an inmate a choice among multiple remedies, exhausting one will satisfy the exhaustion requirement." (*Id.*) Plaintiff further argues that "since there was no requirement that Plaintiff appeal the response to his grievance, the Defendants had no basis for complaining that Plaintiff failed to pursue an appeal of the response he received to his grievance." (*Id.* at 11.) Plaintiff further argues that "Defendants provided no notice to Plaintiff of the PLRA or the consequences of non-compliance, or any semblance of an opportunity to discover them for himself." (*Id.*)

The Court finds that Defendants have properly shown that Plaintiff failed to exhaust his administrative remedies to all claims as required by the PLRA. At the outset, the Court notes that Plaintiff does not provide any affidavits or other sworn testimony in support of his claims. With regard to his substantive arguments concerning Remedy Number 479695-R1 and 490402-F1, even if the Court accepts Plaintiff's assertion that he believed he was abiding by Fort Dix's handbook

---

[3] Plaintiff's "cop-out" raised the following issues: (1) a request for a new mattress; (2) that the old mattress be taken away; (3) that hot water be provided for laundry; (4) that Plaintiff be permitted to shower in the medical unit; and (5) that Plaintiff be returned to his previous room. (*Id.* at 69.)

when he filed his "sensitive" complaint directly to the Regional Office, the Regional Office's response to the complaint makes it clear that they did not find it to be "sensitive" and that Plaintiff must file at the Institutional level first before filing at the Regional level. ("The issue you raised is not sensitive...You should file a request or appeal at the appropriate level via regular procedures...You must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level...Your issues are not sensitive and can be addressed by the institution first before filing an appeal." (Pl.'s Opp. 76.)) The Handbook also states that Plaintiff must file at the Institutional level if the Regional Office does not find a complaint to be sensitive. ("If the complaint is not determined to be sensitive, it will be returned. The inmate may then pursue that matter by filing a BP-229 at the institution.") Therefore, even if Plaintiff initially thought that he was able to file his complaint at the Regional level and that filing would meet his exhaustion requirement, after receiving the Regional Office's response he should have been aware that he must first file the B-9 form at the Institutional level.

Plaintiff argues that he filed his grievance at the Institutional level, as instructed by the Regional and Central Offices on January 22, 2008 and February 27, 2008 respectively, after they rejected his complaint because it was not "sensitive", but that grievance was rejected by the Institution as untimely. However, Plaintiff filed said grievance with the Institution on April 18, 2008, which was past the twenty day deadline set by 28 C.F.R. § 542.14(a). Even allowing Plaintiff twenty days from the date he received his rejection from the Central Office as his "reasonable extension of time" permitted by 28 C.F.R. § 542.14(d)(1) to re-file at the Institutional level, Plaintiff was still well out of time. *See Garrett v. DeRosa*, 2006 WL 561957 at *6 (D.N.J. March 02, 2006)

("[e]ven assuming a liberal twenty-day 'reasonable extension of time' to resubmit the Request at the institutional level, pursuant to 28 C.F.R. §§ 542.14(d)(1)...").

Plaintiff's argument that Defendants did not provide Plaintiff with any notice of the required process or the means to discover them for himself is unavailing. In his January 11, 2008 complaint filed with the Regional Office, Plaintiff states the following: "[i]n accordance with 28 C.F.R. §542.14 and BOP Policy Statement 1330.13(8)(d)...[m]y attorney has also advised me to inform you that I am filing this request with the specific intent of exhausting fully my administrative remedies, prior to proceeding to any judicial remedies." (Pl.'s Opp. 71-75.) Judging from this language, it seems that Plaintiff was aware of the requirement that he must fully exhaust his administrative remedies before proceeding to file his complaint. It is also apparent that Plaintiff was aware of the Bureau of Prisons' requirements regarding administrative remedies, as Plaintiff specifically refers to the relevant Code of Federal Regulations sections. Additionally, Plaintiff references BOP Policy Statement 1330.1, which deals directly with the Administrative Remedy Program. Therefore, Plaintiff was aware of the necessary steps needed to properly exhaust his administrative remedies and failed to properly do so before filing this Complaint.

To the extent that Plaintiff is arguing that his "Inmate Requests to Staff" or "cop-outs" were intended to be his institutional filings, in lieu of the proper B-9 forms, that argument is also unpersuasive. Plaintiff submitted his "Inmate Requests" to Dr. Sulayman, who is not a Defendant, and Warden Grondolsky on December 6, 2007. Dr. Sulayman responded to Plaintiff on December 10, 2007 and Warden Grondolsky responded on December 17, 2007. Plaintiff filed his "sensitive complaint" with the Regional Office on January 11, 2008. Pursuant to the B.O.P. guidelines, Plaintiff may appeal the B-9 grievance decision of the Warden to the Regional Office within twenty

calendar days of the date the Warden signed the decision. 28 C.F.R. § 542.15(a). Even if the Court were to accept Plaintiff's proposition that his "Inmate Requests to Staff" constituted valid substitutes to the B-9 requirement, which it is not so holding, Plaintiff still filed his appeal to the Regional Office after the time for an appeal had expired as it was more than twenty days after the Warden signed his decision.

For the foregoing, the Court will grant Defendants Reiser, Sanchez, Writenour, Lopez, Joanna Wright, Lybrant Wright, Lewars, Pradip Patel, John Chung, Terrero-Leibel, Calaguio, and Grondolosky's Motion for Summary Judgment. An appropriate order follows.

**Dated: September 19, 2010**

s/Robert B. Kugler
**HONORABLE ROBERT B. KUGLER
UNITED STATES DISTRICT JUDGE**